JOHN ADAMSON, Respondent, v. THE UNION RAILROAD COMPANY of the City of Brooklyn, Appellant, Impleaded, etc.

| 74 | 3 |
| 89 | 264 |
| 74h | 3 |
| 65 AD³532 | |
| 74h | 3 |
| 83 AD¹107 | |

*Action to nullify an illegal official act — bad faith sufficient — corruption and fraud need not be shown — prevention of the realization of money by a city is a waste of municipal funds — "fraud" defined.*

Bad faith amounting to fraud is sufficient to justify an action, under chapter 301 of Laws of 1892, by a private individual to prevent an illegal official act on the part of municipal officers, or to prevent the waste and injury of public property. It is not essential that corruption and fraud be shown.

The common council of a city refused to entertain the proposition of a certain street railway company, by which the city would have realized $30,000 for a franchise requested, and the same franchise was granted to another company, whose proposition did not involve its paying the city any compensation therefor. In an action brought to restrain the latter company from constructing its road under the franchise so granted to it, the trial judge found that the act of granting the franchise was wrongful and in bad faith, and a breach of the official duty of the city officials.

*Held,* that a case of malfeasance was established ;

That while there might possibly be a case where circumstances would justify such a course, the action of the officials was, in the case at bar, illegal, wasteful and fraudulent;

The prevention of the realization of money by a city is equivalent to a waste of the public funds of the municipality.

Fraud, in its broad significance, includes all acts and omissions which involve a breach of legal duty injurious to others.

APPEAL by the defendant, The Union Railroad Company of the city of Brooklyn, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 25th day of July, 1893, upon a decision of the court rendered after a trial at the Kings County Special Term, annulling and declaring void a grant made to it.

*James C. Church*, for the appellant.

*Edward M. Grout*, for the respondent.

DYKMAN, J. :

This is an appeal from a judgment procured at Special Term, which adjudged the consent of the local authorities granting to the defendant corporation permission to build its railroad to be illegal,

and restraining that corporation from constructing any part of its road.

It is the object of the action to procure a judgment which shall declare the grant to the corporation set out in the complaint to be illegal, and restrain that company from doing any act or taking any step toward the construction of a railroad over the streets and avenues described.

The complaint contains the following allegations : The plaintiff is a citizen, resident and freeholder of the city of Brooklyn, and owns real estate therein which is assessed for more than $1,000 ; that he is liable to be assessed in the city of Brooklyn, and has been so assessed and has paid taxes there within one year previous to the commencement of this action. It is also alleged that the plaintiff's dwelling house is situated on the southerly side of Union street in the city of Brooklyn ; that the city of Brooklyn is a municipal corporation, and that the Union Railroad Company is a domestic railroad corporation ; that the individuals named as defendants are members of the common council of the city of Brooklyn, and, as such, were trustees of the property, funds, effects and estate of the city.

In or about the month of June, 1892, the defendant railroad company and the Union Street Railway Company, another domestic railway corporation, made application to the common council for leave to construct, operate and maintain a street surface railway to be run by electric power along certain streets in the city of Brooklyn.

The common council, first through a committee and afterwards as a whole body, heard the applications at the same time. The Union Street Railway Company then and there offered the said committee and the common council to pay the sum of $30,000 for a grant from the city authorities for the right to construct and operate such railroad through such streets, and was ready and able to pay the same. The defendant railway corporation made no offer whatever for such grant. Each of the railway companies proposed to build and operate, and would have built and operated, the same kind of a railway, and there was no difference between them, and no preference could, for any reason, be given to the one over the other.

The common council and its committee wrongfully and willfully, and in violation of their official duties to the city and the taxpayers,

and in waste of the property, funds, effects and estate of the city, solely in order to favor the said defendant railway company and the persons who are incorporators and stockholders thereof, and colluding with such persons, with intent to cheat and defraud said city out of the value of said leave to construct, operate and maintain said railroad, refused to entertain the offer of the Union Street Railway Company, and ignored and refused to consider the same, and on the 7th day of July, 1892, voted to give leave to construct, operate and maintain such street surface railway on the said streets and avenues to the defendant railway company and exacted no terms or compensation therefor. The resolution granting said leave thereafter came before the mayor of the city of Brooklyn and was vetoed by him on the grounds, among others, that the same was illegal and wasteful, and that the leave to construct, operate and maintain such railroad if of any value to any railroad company was also of value to the city of Brooklyn, and the city of Brooklyn should receive compensation therefor.

Thereafter the common council wrongfully and willfully, and in violation of their official duties to the city and taxpayers, wasted the property and funds of the city, solely to favor the defendant railway company and the persons who are incorporators and stockholders thereof, and colluded with such persons with intent to cheat and defraud said city out of the value of said leave to construct, operate and maintain such railroad, by again refusing to entertain the offer of the Union Street Railway Company, and ignored and refused to consider the same, and passed the said resolution over said veto.

The right to construct, operate and maintain a street surface railway over the said streets and avenues is a valuable right, for which the city of Brooklyn could realize a large sum of money, little less than the sum of $30,000.

The plaintiff has requested the defendant the city of Brooklyn, through its mayor, to bring or cause to be brought an action to have the said grant declared null and void, but the said defendant has neglected and failed so to do.

The cause was tried before a judge, who found that the plaintiff is a citizen of the city of Brooklyn, a freeholder and elector therein, and that his assessment on real estate therein owned by him amounts to more than $1,000, and he is liable to be taxed upon such

assessment in such city, and has been so assessed, and has so paid taxes in said city on such assessment for one year previous to the commencement of this action. That the city of Brooklyn is a municipal corporation. The defendant, the Union Railroad Company, and the Union Street Railway Company also, are domestic corporations. The individual defendants are members of the common council of the city of Brooklyn. Shortly after the incorporation of the Union Railroad Company of the city of Brooklyn, it made written application to the common council for their consent to the construction and operation of its railroad upon the streets and avenues described in its charter; but no decisive action was at that time taken in regard to such written application.

The two railroad corporations, the Union Railroad Company and the Union Street Railway Company, made application to the common council for leave to construct, operate and maintain a street surface railroad, to be operated by electric power along certain streets in the said city, the route described in both applications being the same.

The attorney for the Union Street Railway Company offered to the committee to pay to the said city $30,000 for the right applied for; that said committee failed, refused and neglected to entertain the offer of $30,000, and reported in writing to the common council, recommending that the said right be given to the defendant railroad company, and failed and neglected to report the said offer of the $30,000 to the common council. The committee, and the members thereof, purposely and in bad faith, and in order to prevent the consideration of the said offer by the common council, failed to report the same, and the common council passed a resolution granting the consent asked for by the Union Railroad Company. The offer of $30,000 was not entertained or considered by the common council, but that body by resolution granted the right to build and operate such road along the entire route to the defendant railway company, without obtaining or exacting any equivalent conditions, or obtaining any service or advantage which the other company would not also have furnished to the city and public, and without obtaining any compensation for such permission, and gave away the said franchise without recognizing the proposition and offer of the Union Street Railway Company. That neither the committee nor

the common council were influenced in their action by any differences in accommodation or public service between the said two companies by the railroads they intended to build and operate.

As conclusions of law, the judge decided that the neglect to entertain the offer of $30,000 and report the same to the common council was a breach of official duty by the members of the committee, and unlawful and done in bad faith; that the committee and common council were required by law to entertain the said offer, and the said committee were required by law to report the same to said common council, and it was the duty of the common council to entertain and consider the said offer, and to make the said grant to the company offering and ready to pay the said sum of $30,000 therefor, there being no satisfactory offer or inducement held out by the other company. That the refusal to entertain the proposition in the said petition and the said offer, and the giving away of the said right or franchise notwithstanding the same, for no consideration, and without exacting or receiving any equivalent, was wrongful and in bad faith, and a breach of official duty by the official defendants, and that the plaintiff was entitled to judgment enjoining the defendants and each of them from proceeding further with such illegal action, or from constructing or permitting the construction of the said road, and also annulling the said action of the common council, and declaring void and of no effect its said resolution or grant.

These findings are amply sustained by the evidence, and judgment was entered in accordance therewith pursuant to the first part of the prayer of the complaint, and the Union Railroad Company has appealed therefrom to this court.

This action was tried and decided upon the theory that the plaintiff was a taxpayer, and in reference to the rights of taxpayers to entertain such actions under chapter 301 of the Laws of 1892, and we shall so consider it.

The portion of section 1, which is material to this action, reads as follows: "All officers, agents, commissioners and other persons acting, or who have acted, for and on behalf of any county, town, village or municipal corporation in this State, and each and every one of them, may be prosecuted, and an action or actions may be maintained against them to prevent any illegal official act on the part of any

such officers, agents, commissioners or other persons, or to prevent waste or injury to, or to restore and make good any property, funds or estate of such county, town, village or municipal corporation by any person or corporation whose assessment, or by any number of persons or corporations jointly, the sum of whose assessments shall amount to one thousand dollars, and who shall be liable to pay taxes on such assessment or assessments in the county, town, village or municipal corporation to prevent the waste or injury of whose property the action is brought, or who have been assessed or paid taxes therein upon any assessment or assessments of the above-named amount, within one year previous to the commencement of any such action or actions."

The object of the action so authorized must be to prevent an illegal official act, or to prevent waste or injury to any property, funds or estate of such county, town, village or municipal corporation. Civil actions by private individuals to prevent waste and injury of public property, protect taxpayers and restrain official malfeasance, were unknown to the common law, and were first authorized in this State in 1872, in consequence of the stupendous frauds perpetrated in the city of New York about that time.

The first act authorized an action against officers and agents of counties, towns and municipal corporations of the State to prevent waste or injury to property or funds thereof. (Laws of 1872, chap. 161.)

Thereafter this act was incorporated into section 1925 of the Code of Civil Procedure. Then came chapter 526 of the Laws of 1879, which gave the action for the same purpose in substantially the same language. That was followed by chapter 435 of the Laws of 1880, in the same terms so far as the relief was concerned.

The first act of 1872 was entitled " An act for the protection of taxpayers against the frauds, embezzlements and wrongful acts of public officers and agents," and down to 1880 the acts were amendatory of that statute.

Then came the act of 1881, which was an independent statute, entitled " An act for the protection of taxpayers," and in it for the first time were these words : " To prevent any illegal official act on the part of any such officers," followed by the words " or to prevent waste," etc. (Chap. 531, Laws of 1881.) That law repealed chapter 435 of the Laws of 1880.

To that law there was an amendment in 1887, but substantially the same words were employed in specifying the relief authorized as in the law of 1881. (Chap. 673, Laws of 1887.) That statute was followed by chapter 301 of the Laws of 1892, from which we have quoted. The history of legislation on this subject shows how progressive have been the enactments. Instead of an abridgment of its scope, or a relaxation of its rigor, the Legislature has extended its sweep and augmented its severity, and that is a sufficient admonition against any circumscription of its operation. All the statutes have been in the interest of the public and aimed at frauds and wrongful acts of public officers and agents.

It is the insistance of the appellant that bad faith is insufficient to justify this action, and that nothing short of corruption and fraud will suffice, and of that there is no proof. We cannot concur with this view. It was stated in substance in the opinion of the Court of Appeals in *Talcott* v. *City of Buffalo* (125 N. Y. 280) that fraud, or bad faith amounting to fraud, brought a case within the operation of this statute.

Here the common council refused to entertain the proposition of the Union Street Railway Company, by which the city would have realized the sum of $30,000 for the same franchise which was bestowed without compensation, and the trial judge found that act was wrongful, in bad faith and a breach of official duty of the official defendants.

Plainly it was a case of malfeasance, and judged by the motives which actuate men the inference is easily drawn that the action was collusive. If the object was not to favor the defendant corporation the act is inexplicable. That favor was a pecuniary injury to the municipality and the act was a fraud upon the city. Official misconduct and bad faith are so near the domain of fraud that the line of partition is indistinguishable. While it is difficult to give a precise definition of fraud, yet in its broad signification it includes all acts and omissions which involve a breach of legal duty, injurious to others.

In fact, to the eye of an ordinary observer, the fraud here is palpable. One company offered $30,000 for the franchise, and the offer was refused, and the other offered nothing and received the franchise.

While there may possibly be a case where circumstances would justify such a course, yet this record discloses no such justification.

We concur fully with the trial judge that the prevention of the realization of money by the city is equivalent to waste of the public funds of the municipality.

In fact, we concur in the opinion of the trial judge entirely, and deem further elaboration unnecessary.

In conclusion, we say the action of the officials was illegal, wasteful and fraudulent, and the judgment should be affirmed, with costs.

BARNARD, P. J., concurred.

Judgment affirmed, with costs.