Howard T. Hogan, J.
Plaintiff in an action seeking a declaration that certain acts of the Board of Trustees of the Village of Rockville Centre are illegal and void and also seeking a per *14 manent injunction restraining them from proceeding with an urban renewal program, now move for an injunction pendente lite. Defendants have cross-moved to dismiss the complaint on the ground that it does- not state facts sufficient to constitute a cause of action.
Two causes of action are pleaded. The first alleges that the Mayor of the village, by reason of his ownership of real property “ contiguous to, connected with, on the border line of, and next to ” the area selected for urban renewal, which real property would increase in value by reason of this program, is barred by law from participating in the proceedings to acquire and to develop this area.
The second alleges that certain properties within the area proposed to be condemned are not substandard, and for that reason, the acquisition of this property and the demolition of its buildings are not authorized by the laws controlling urban renewal.
Section 332 of the Village Law prohibits a village officer from acting “As such in any matter or proceeding involving the acquisition of real property then owned by him for a public improvement.”
The Court of Appeals, in Baker v. Marley (8 N Y 2d 365), has stated that a member of a village board of trustees is prohibited from participating in any phase of a condemnation proceeding, no matter how slight may be his interest in the property to he acquired. There appears, however, to be a dearth of authorities in this State on the question of whether ownership of land in proximity to the area to be condemned gives rise to a similar disability. The general rule, as expressed in American Law Reports Annotated (vol. 133, pp. 1257,1261-1262), appears, from the authorities cited, to be that: ‘‘ The interest which disqualifies a member of councils to vote is a personal or private one, not such an interest as he has in common with all other citizens or owners of property ’ ’ and “ [t] o say in general terms that a member of a city council cannot vote on the passage of an ordinance providing for the construction of some important public improvement, because he owns real property * * * in the city, when the improvement is a general one, is at once to disqualify every property owner in the city from belonging to the city council, and committing all the material interests of the city to a class of persons who have no property rights to protect ” and “ [g] enerally, the rule seems to be that the fact that a member of a board, in common with the rest of the community or a considerable portion thereof, will be benefited by a public improvement will not render his vote on a measure contemplating such improvement void.” (p. 1267).
*15 The factor which brings this acquisition of land by eminent domain and the expenditure of public funds within constitutional limits is that urban renewal serves a public purpose. It follows that everyone in the 'Village of Rockville Centre will benefit in some measure from this project and that coincidentally, real estate values, particularly those in close proximity to the area, may be enhanced.
Section 42 of the Village Law requires that a mayor or trustee of a village must, at the time of his election, be the record owner of property within that village. But if it be held that section 332 of the same law prohibits public officials from benefiting in any way from a public improvement, then the two statutes are inconsistent. The only possible interpretation of section 332 is one which limits its prohibition to the ownership of lemd which is to he acquired.
"Whether the land owned by a public officer be in close proximity to, or at a considerable distance from, the project, is not material. The court cannot be expected to rule upon the degree to which he may benefit, or fix a dividing line on one side of which the ownership of property disqualifies him from voting in a proposal to acquire land, while beyond it, even though by only a foot or two, ownership would create no disability.
Accordingly, the court holds that the first cause of action is insufficient in law.
The second cause of action which alleges that certain properties within the designated area are not “ substandard ” likewise is insufficient.
This precise point has been dealt with by the Court of Appeals in Kaskel v. Impellitteri (306 N. Y. 73, 79) where it was held that: ‘ ‘ It is not seriously contended by anyone that, for an area to be subject to those laws, every single building therein must be below civilized standards. The statute (and the Constitution), like other similar laws, contemplates that clearing and redevelopment will be of an entire area, not of a separate parcel, and, surely, such statutes would not be very useful if limited to areas where every single building is substandard.”
(It was pointed out in the dissenting opinion that 33.8% of the area consisted of unimproved land used largely for parking lots and that this could hardly be classified as substandard. Moreover, included in the taking and demolition was the Manufacturer’s Trust Building, having an assessed valuation of $1,500,000.)
It follows that the complaint fails to state a good cause of action and must be dismissed. Plaintiff’s motion for a temporary injunction accordingly is denied.